671 So.2d 1327 (1996)
Joe Bruce COOK, Billy Hardy James a/k/a "Bubba" James, Larry Brown and Carl Wayne James
v.
STATE of Mississippi.
No. 93-IA-00072-SCT.
Supreme Court of Mississippi.
March 28, 1996.
*1328 Bobby T. Vance, Batesville, William R. Sanders, Jr., Charleston, Steve McCord, D. Ronald Musgrove, Smith & Musgrove, Batesville, William Liston, III, Liston Lancaster, Winona, William Liston, Liston & Lancaster, Jackson, for Appellant.
Michael C. Moore, Attorney General, Jackson, W. Glenn Watts, Sp. Asst. Attorney General, Jackson, for Appellee.
En Banc.
PITTMAN, Justice, for the Court:
Joe Bruce Cook, Billy Hardy James a/k/a "Bubba" James, Larry Brown, and Carl Wayne James were twice indicted together by the grand jury sitting in Quitman County. The first indictment, No. 5150, contained 73 counts, said counts being for conspiracy to defraud and cheat Bunge Corporation out of money for forged soybean weight certificates. Later at trial, all four defendants received directed verdicts of not guilty, which were entered on July 7, 1992. On August 20, 1992, all four appellants were again indicted (indictment No. 5228) on a charge of conspiracy to defraud and cheat the Farmers Home Administration.
On September 14, 1992, all four appellants filed motions to dismiss indictment No. 5228 on the grounds of double jeopardy. By order dated December 16, 1992, the trial court denied all four motions to dismiss indictment No. 5228. Subsequently, on January 8, 1993, the order dismissing the indictment was amended certifying the following issues for review via interlocutory appeal. On February 1, 1994, this Court granted appellants' requests to file interlocutory appeals.
Cook and Billy James assign the following assignment of error:
THE CONSPIRACY CHARGED IN THE ONE-COUNT PENDING INDICTMENT IS THE "SAME OFFENSE" FOR DOUBLE JEOPARDY PURPOSES AS THE CONSPIRACY CHARGED IN COUNT ONE OF THE SEVENTY-TWO COUNT INDICTMENT.
In his brief, Brown assigns the following assignment of error:
THE INSTANT PROSECUTION IS BARRED ON THE GROUNDS OF DOUBLE JEOPARDY BY THE STATE OF MISSISSIPPI'S PREVIOUS PROSECUTION OF APPELLANT IN CAUSE NUMBER 5150 IN THE CIRCUIT COURT OF QUITMAN COUNTY.
Carl James assigns the following assignment of error:
THE INSTANT PROSECUTION OF APPELLANT IN CAUSE NUMBER 5228 BEFORE THE CIRCUIT COURT OF *1329 QUITMAN COUNTY IS BARRED BY THE DOUBLE JEOPARDY CLAUSES OF THE MISSISSIPPI AND/OR UNITED STATES CONSTITUTIONS IN THAT SAID CHARGE CONSTITUTES THE SAME OFFENSE FOR PURPOSE OF DOUBLE JEOPARDY FOR WHICH APPELLANT WAS PREVIOUSLY ACQUITTED IN A FORMER PROSECUTION BY THE STATE OF MISSISSIPPI ON THE INDICTMENT IN CAUSE NUMBER 5150 BEFORE THE CIRCUIT COURT OF QUITMAN COUNTY.
All the assignments of error are with merit and this Court finds that the second prosecution is barred by the Double Jeopardy Clause of the United States Constitution.

FACTS
In 1987, James Wayne Gentry, a/k/a "Pete Gentry" met with Carl Wayne James in Tallahatchie County, Mississippi, and asked if Carl would sell some FHA beans in his (Carl's) name. Carl was unable to comply with said request as he had an existing lien (FHA loan) on his crops.[1] However, Carl suggested that his brother, Billy James, would perhaps sell them. A second meeting was later held wherein Billy James agreed to sell the FHA beans. Later, Cook and Brown were also recruited to sell such beans in their names.
Pete Gentry received counterfeit (forged) Bunge Corporation soybean weight certificates in Quitman County from Donnie Gates, Milton Butler and Herbert Thompson, Bunge Corporate employees. These certificates were thereafter delivered to Carl James in Tallahatchie County. Carl James delivered them to Tallahatchie Farmer's Supply Co., Inc. (hereinafter "TFS") in Tallahatchie County, Mississippi. In exchange for the certificates, TFS issued checks payable to Billy James, Cook and Brown based on the current market value. Billy James, Cook and Brown, later cashed the checks for a fee of $300.00 per check. Carl received the remainder of the money and delivered it to Pete Gentry. Carl received a fee of $100.00 per check. No FHA beans were ever sold or deposited with the Bunge Corporation in Marks, Mississippi.
On August 20, 1991, Milton Butler, Donnie Gates, Pete Gentry, Billy Hardy James, Carl Wayne James, Joe Bruce Cook and Larry Brown were jointly indicted (indictment No. 5150) on a charge of conspiracy to commit forgery and/or defraud Bunge Corporation. The indictment, containing 73 counts, read in part as follows:
That MILTON BUTLER, DONNIE GATES, JAMES W. GENTRY, A/K/A "PETE" GENTRY, BILLY HARDY JAMES, A/K/A "BUBBA" JAMES, CARL WAYNE JAMES, JOE BRUCE COOK and LARRY BROWN, while in Quitman County, Mississippi, or otherwise within the jurisdiction of this Court, on or about August 20, 1989, and August 20, 1991, did unlawfully, wilfully and feloniously conspire with one another and with Gary Elliot, said Gary Elliott being named as a co-conspirator, but not as a defendant herein, to commit the crime of forgery . .. or to cheat and defraud the Bunge Corporation out of money by a means in itself criminal or which would amount to a cheat, fraud or false pretenses or to accomplish any unlawful purpose by forging and counterfeiting numerous Bunge Corporation soybean weight certificates/warehouse receipts, and causing said false and fraudulent weight certificates/warehouse receipts to be sold, exchanged or delivered to Tallahatchie Farmers Supply Co., Inc., a corporation which issued checks representing payment for the soybeans purportedly delivered to Bunge Corporation, in the name of and as property of Tallahatchie Farmers Supply Co., Inc., said payment being based on the evidence of the said false weight certificates/warehouse receipts, ...
With regard to indictment No. 5150, the first count alleged the conspiracy charge, while the remaining 72 counts consisted of the substantive counts. In addition, Herbert Thompson was indicted in cause No. 5194 with essentially the same charges and his *1330 case was later consolidated with cause No. 5150.[2] Indictment No. 5150 along with Cause No. 5194 (trial of Herbert Thompson) was set for trial which began on June 22, 1992. The trial court found that the State had failed to present any evidence or testimony that the Defendants knew that the certificates were forged. As such, on July 6, 1992, the trial court directed verdicts of not guilty, which were entered on July 7, 1992.
Subsequently on August 20, 1992, all four appellants were indicted (indictment No. 5228) on a charge of conspiracy to defraud the FHA with the indictment reading as follows:
That CARL WAYNE JAMES, BILLY HARDY JAMES, JOE BRUCE COOK and LARRY BROWN, while within the jurisdiction of this Court, on or about August 20, 1990, and August 20, 1991, did unlawfully, wilfully and feloniously conspire with one another and with James Wayne Gentry, also known as "Pete" Gentry, said James Wayne Gentry being named as a co-conspirator, but not as a defendant herein, to cheat and defraud the Farmer's Home Administration, an agency of the United States Department of Agriculture, out of money or property, by a means in itself criminal, or which would amount to a cheat, fraud or false pretense, or to accomplish an unlawful purpose or a lawful purpose by any unlawful means, by causing Bunge Corporation soybean weight certificates to be negotiated, verily believing that the said soybean weight certificates represented deposits of soybeans upon which there existed a lien, mortgage, or other property interest in favor of the Farmer's Home Administration, with the unlawful, willful and felonious intent to deprive the said Farmer's Home Administration of the said property interest that the said Carl Wayne James, Billy Hardy James, Joe Bruce Cook and Larry Brown believed to exist, ...
The following additional facts were developed at an arraignment hearing on Cause No. 5150, an arraignment hearing on Cause No. 5228, and at the pre-trial hearing on Cause No. 5228. James "Pete" Gentry, Billy James, Carl James, Cook and Brown all entered pleas of not guilty to all charges contained in indictment No. 5150. On August 27, 1992, Billy James, Carl James, Cook and Brown all entered pleas of not guilty to all charges contained in indictment No. 5228.
During discussions about continuing Cause No. 5228, the Court inquired about the period for new discovery and the State responded "I know of no additional discovery from the first trial. We are under brand new indictments." Again during the pre-trial hearing held on September 14, 1992, the State commented on using discovery from the first trial:
I had hoped to be able to agree with all of the attorneys that the discovery would be the same, ... and also now they have had the benefit of going through a trial on a similar charge. And so we would encompass on our statement to the court and to counsel for the defendants, the State's discovery in cause No. 5228 would be the same discovery already tendered to them in cause No. 5150, plus the information they were able to glean from the trial itself in cause No. 5150.
The State also discussed the basis of indictment No. 5228, stating:
[W]e have charged these defendants with trying to defraud a different victim, that being Farmer's Home Administration ... the conduct would certainly be similar, but there  like I say, there may be an emphasis toward this different victim.
Now the State's position in the trial of this matter when it came on was that these defendants were trying to defraud the Bunge Corporation, and this court found prior to directing a verdict for these defendants, that the State had not shown knowledge of a forgery, and that was the  based on my review of the record, that was the sole finding by the court that entitled them to a directed verdict. And so this case charges them with trying to defraud a different victim.
The pre-trial hearing on September 14, 1992, recessed and then reconvened on October *1331 1, 1992. This portion of the hearing largely focused on the issue of proper venue. Nonetheless, at that point all four defendants utilized the same documents and also agreed to allow Mr. Liston, attorney for Carl James, to speak and argue on behalf of the entire group.
The trial court found that the court had proper venue jurisdiction, that the offense charged in the indictment was not "an inherent and/or legal impossibility," and that the prosecution of the defendants in Cause No. 5228 would not violate the constitutional prohibitions against double jeopardy. With regard to the issue of double jeopardy the court stated:
Although the proof in this case will be similar to that adduced in Cause No. 5150 on the docket of this Court, the defendants herein are charged with the commission of an offense which is totally separate, apart and different from those for which these defendants were granted a directed verdict in Cause No. 5150. The directed verdict was granted for a very limited and specifically articulated reason and was not equivalent to a general jury verdict of acquittal for the double jeopardy purposes of these motions.
The trial judge later amended his order certifying the present case for interlocutory appeal. This Court entered an Order certifying the issue of double jeopardy for interlocutory appeal.

DISCUSSION OF THE LAW
Before the Court via an interlocutory appeal is the question of whether the first indictment (No. 5150) precludes the subsequent prosecution of all four appellants on the second indictment (No. 5228). In essence, the question is whether the second indictment is barred on the grounds of double jeopardy.
The Double Jeopardy Clause of the Fifth Amendment reads as follows, "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. This proscription "has been applied to the states through the Due Process Clause of the Fourteenth Amendment." McNeal v. Hollowell, 481 F.2d 1145, 1149 (5th Cir.1973), cert. denied, 415 U.S. 951, 94 S.Ct. 1476, 39 L.Ed.2d 567 (1974) (citations omitted).
Double jeopardy protection applies to successive prosecutions for the same criminal offense. United States v. Dixon, 509 U.S. 688, 694, 113 S.Ct. 2849, 2855, 125 L.Ed.2d 556 (1993). The Supreme Court has also held that:
In both the multiple punishment and multiple prosecution contexts, this Court has concluded that where the two offenses for which the defendant is punished or tried cannot survive the "same-elements" test, the double jeopardy bar applies... . The same-elements test, sometimes referred to as the "Blockburger" test, inquires whether each offense contains an element not contained in the other; if not, they are the "same offence" and double jeopardy bars additional punishment and successive prosecution.
Dixon, 509 U.S. at 696, 113 S.Ct. at 2856 (citations omitted). In Dixon, the Court recognized that in Grady v. Corbin, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), it adopted an additional test that "a subsequent prosecution must satisfy a `same-conduct' test to avoid the double jeopardy bar." Id. at 697, 113 S.Ct. at 2856. However, the Court concluded that "Grady must be overruled... . Grady lacks constitutional roots. The `same conduct' rule it announced is wholly inconsistent with earlier Supreme Court precedent and with the clear common-law understanding of double jeopardy." Dixon, 509 U.S. at 704, 113 S.Ct. at 2860. Thus, as the Supreme Court has articulated, the rule is again the "Blockburger" or "same-elements" test.
However, when the two crimes are conspiracies, the test may not be the "Blockburger test." For example, in the Fifth Circuit, there is a separate test for determining when a separate conspiracy exists. United States v. Maza, 983 F.2d 1004, 1012 (5th Cir.1993).
In United States v. Marable, 578 F.2d 151 (5th Cir. 1978) the court described the elements relevant to determining the existence of a separate conspiracy.

*1332 Our examination of the record focuses upon these elements: (1) time, (2) persons acting as co-conspirators, (3) the statutory offenses charged in the indictments, (4) the overt acts charged by the government or any other description of the offense charged which indicates the nature and scope of the activity which the government sought to punish in each case, and (5) place where the events alleged as a part of the conspiracy took place. Id. at 154. The government has the burden of proving a separate conspiracy under these elements and the standard is a preponderance of the evidence.
Maza, 983 F.2d at 1013 (footnote omitted) (citation omitted).
In the case before this Court, the record indicates the following: (1) the same time frame is involved, (2) the persons named as co-conspirators are the same with the exception of Milton Butler and Donnie Gates, (3) the offenses charged in both indictments are conspiracy to defraud and cheat, (4) the overt acts by the defendants amount to the same course of conduct of transferring the forged certificates to TFS in exchange for money in the form of checks made out in appellants' names, and (5) the places where such conduct occurred were Tallahatchie and Quitman Counties.
The Fifth Circuit in an analogous case, again dealt with the question of double jeopardy and conspiracies. U.S. v. Farmigoni was an appeal from the Mississippi Southern District Court wherein appellant was charged with bank fraud. U.S. v. Farmigoni, 934 F.2d 63 (5th Cir.1991), cert. denied, 502 U.S. 1090, 112 S.Ct. 1160, 117 L.Ed.2d 407 (1992). The appellant had been convicted of the same charge in Louisiana and the charges arose from the same series of events. The appeals court noted that the case differed from the Blockburger decision because "Farmigoni violated the same statute on two separate occasions, in two different ways, involving two different victims  two separate offenses." Id. at 65. The court further held that the subsequent prosecution in Mississippi did not violate the double jeopardy clause: "Farmigoni's contention that double jeopardy attaches because both indictments arose out of the same scheme ignores the fact that a single transaction, especially if, as here, of an extended sort, can produce numerous infractions." Id. The court held that the "Louisiana indictment sets forth a separate and independent violation from the Mississippi indictment." Id. at 66. There were two distinct victims, Trustmark Bank and First Financial. First Financial was named in the Louisiana indictment and Trustmark was named in the Mississippi indictment. The court noted that:
The Louisiana indictment viewed as a whole does not provide adequate basis for Farmigoni's contention. The specific counts under which Farmigoni was convicted did not refer by name to any financial institution other than First Financial... . The names of no other institutions either appear in the Louisiana indictment or are required for conviction under the bank fraud statute. Accordingly, the Louisiana indictment sets forth a separate and independent violation from the Mississippi indictment.
Id.
Upon examination of the record in the case before this Court, the charge of conspiracy was brought in both indictments, 5150 and 5228. Bunge was named in both indictments, however, FHA was named only in the second indictment. This makes the present case factually distinguishable from Farmigoni. Had Bunge not been named in both indictments, then double jeopardy may not bar the subsequent prosecution for the same reasons stated in Farmigoni  it would be two separate offenses that violate one statute and resulted from one common scheme or plan.
Applying the Marable factors and the analogous case law, it is apparent that the two indictments are for the same offense. Thus, the defendants were twice placed in jeopardy for the alleged crime. The actions charged in the second indictment were part and parcel of those charged in the first indictment. Under the test and analogous case law provided by the Fifth Circuit, the lower court is in error.
*1333 Accordingly, the trial court's order should be vacated with direction that any subsequent prosecution of appellants for activities stemming from the forged certificates is barred by the double jeopardy clause.
JUDGMENT OF TRIAL COURT'S ORDER VACATED. REVERSED AND REMANDED.
DAN M. LEE, C.J., PRATHER and SULLIVAN, P.JJ., and BANKS, McRAE, JAMES L. ROBERTS, Jr., SMITH and MILLS, JJ., concur.
NOTES
[1] The record indicates that Carl intended to involve the other three men in negotiating the soybean weight certificates.
[2] Herbert Thompson was found guilty on all charges.